**RECORD NO. 14-1021(L)**
**CONSOLIDATED W/14-1022**

═══════════════════════════

IN THE

# United States Court of Appeals

**FOR THE FOURTH CIRCUIT**

─────────────

CVLR PERFORMANCE HORSES, INC.,

*Plaintiff,*

VICKI L. MARSH,
and
KAREN FOSTER,

*Intervenors/Plaintiffs-Appellants,*

JOHN L. WYNNE; 1650 PARTNERS, LLC;
RIVERMONT CONSULTANTS, INC.,
f/k/a The Rivermont Banking Co., Inc.,

*Defendants-Appellees*,

OLD DOMINION NATIONAL BANK; ADVANTAGE TITLE &
CLOSING LLC; S&R FARM, LLC; RALPH BECK; SHANA LESTER,
f/k/a Shana Beck,

*Defendants.*

─────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE  WESTERN DISTRICT OF VIRGINIA AT LYNCHBURG

─────────────

## RESPONSE BRIEF OF APPELLEES

─────────────

Chad A. Mooney
PETTY, LIVINGSTON,
DAWSON & RICHARDS
Post Office Box 1080
Lynchburg, VA 24505
(434) 846-2768 Phone
cmooney@pldrlaw.com

John E. Falcone
PETTY, LIVINGSTON,
DAWSON & RICHARDS
Post Office Box 1080
Lynchburg, VA 24505
(434) 846-2768 Phone
jfalcone@pldrlaw.com

*Counsel for Appellees*

═══════════════════════════

**LANTAGNE LEGAL PRINTING** 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477
**A Division of Lantagne Duplicating Services**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____          Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.       Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.       Does party/amicus have any parent corporations?                          YES      NO
         If yes, identify all parent corporations, including grandparent and great-grandparent corporations:




3.       Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    YES      NO
         If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    YES    NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    YES    NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    YES    NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************
I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
(signature)                                                              (date)

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF SUJBJECT MATTER
AND APPELLATE JURISDICTION ....................................................1

STATEMENT OF THE ISSUES..........................................................1

STATEMENT OF THE CASE................................................................2

STATEMENT OF THE FACTS ............................................................4

   I.    Marsh's RICO Allegations Against Wynne ............................4

   II.   Foster's RICO Allegations Against Wynne ............................7

   III.   Facts Showing Marsh's Lack of Diligence .............................8

   IV.   Facts Showing Foster's Lack of Diligence .............................9

   V.   Alleged Extraordinary Circumstance ...................................10

SUMMARY OF ARGUMENT ...........................................................10

ARGUMENT .......................................................................................11

   I.   Standard of Review .................................................................11

   II.   Discussion of the Issues..........................................................12

       A.   Appellants' Motion for Intervention Is Moot Given The Joint Dismissal Of The CVLR Case.........................................................12

       B.   The District Court Correctly Exercised Its Discretion And Ruled That Marsh And Foster Did Not Exercise Due Diligence Where (1) They Failed To Set Forth Sufficient

Facts How They Actively Pursued Their Claims, (2) They Waited More Than Five Years To Seek Intervention After Their Claims Accrued, (3) They Waited Six Months After This Court Overturned The Dismissal To Seek Intervention, (4) The Smallest Amount Of Diligence Would Have Resulted In A Timely Filing, And (5) They Adopted A "Wait And See" Strategy ......................................................................... 14

    1.    Marsh ................................................................ 16

    2.    Foster ................................................................ 20

    3.    Marsh and Foster ............................................. 23

C.    The District Court Correctly Exercised Its Discretion And Ruled That The Uncertainty Of The Appellants' Claim Due to CVLR's Appeal Does Not Constitute Extraordinary Circumstances ................................................................. 24

D.    Equitable Tolling Does Not Apply When The Extraordinary Circumstance Occurred After The Limitation Period Expired ........ 28

E.    District Court Properly Exercised Its Discretion By Ruling On The Intervention Motions Without Conducting An Evidentiary Hearing ................................................. 30

CONCLUSION ........................................................................... 33

REQUEST FOR ORAL ARGUMENT ................................................ 34

CERTIFICATE OF COMPLIANCE .................................................. 35

CERTIFICATE OF FILING AND SERVICE ....................................... 36

# TABLE OF AUTHORITIES

## CASES

Page

Belcher v. Kirkwood,
    238 Va. 430, 383 S.E.2d 729 (1989) .................................................. 2

Bills v. Clark,
    628 F.3d 1092 (9th Cir. 2010) .................................................. 32, 33

Burnett v. N.Y. Central R.R. Co.,
    380 U.S. 424, 85 S. Ct. 1050, 13 L. Ed. 2d 941 (1965) .................................. 14

Canales v. Sullivan,
    936 F.2d 755 (2d Cir. N.Y. 1991) .................................................. 32

Chao v. Virginia Department of Transport,
    291 F.3d 276 (4th Cir. 2002) ...................................... 11, 15, 26

Chesapeake Bay Foundation v. American Recovery Co.,
    769 F.2d 207 (4th Cir. 1985) .................................................. 12, 13

Diaz v. Kelly,
    515 F.3d 149 (2d Cir. 2008) .................................................. 25

Escalante v. Huffman,
    2011 U.S. Dist. LEXIS 81382 (W.D. Va. 2011) ........................ 19, 20

Evans v. Eaton Corp. Long Term Disability Plan,
    514 F.3d 315 (4th Cir. 2008) .................................................. 12

Forbess v. Frankie,
    749 F.3d 837 (9th Cir. 2014) ............................................ 32, 33

Garrick v. DiGuglielmo,
    162 Fed. Appx. 122 (3d Cir. 2005) ........................................ 25

GMAC Commer. Mortg. Corp. v. LaSalle Bank N.A.,
    213 F.R.D. 150 (S.D.N.Y.2003) .............................................. 13

Hanger v. Abbott,
　　72 U.S. (6 Wall.) 532, 18 L. Ed. 939 (1867) ....................................................26

Harris v. Hutchinson,
　　209 F.3d 325 (4th Cir. 2000) ............................................................15, 25

Hill v. Porter Mem'l Hospital,
　　90 F.3d 220 (7th Cir. 1996) ...............................................................31

Holland v. Florida,
　　560 U.S. 631, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) ........................14, 16

Irwin v. Department of Veterans Affairs,
　　498 U.S. 89, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990) ...........................15, 16

Muth v. United States,
　　1 F.3d 246 (4th Cir. 1993) .................................................................31

Potomac Electric Power Co. v. Electric Motor and Supply, Inc.,
　　262 F.3d 260 (4th Cir. 2001) .......................................................17, 22

Reed v. Mokena Sch. District No.
　　41 F.3d 1153 (7th Cir. 1994) ..............................................................25

Riddle v. Mondragon,
　　83 F.3d 1197 (10th Cir. 1996) ..........................................................31

Rotella v. Wood,
　　528 U.S. 549 (2000)..........................................................................17

Rouse v. Lee,
　　339 F.3d 238 (4th Cir. 2003) ..............................................................16

Smith v. Pennington,
　　352 F.3d 884 (4th Cir. 2003) ..............................................................11

Smith v. Plaster,
　　151 Va. 252, 144 S.E. 41 (Va. 1928)....................................................22

Stringfellow v. Concerned Neighbors in Action,
    480 U.S. 370, 107 S. Ct. 1177, 94 L. Ed. 2d 389 (1987) ...................................1

United States v. Babb,
    54 Fed. Appx. 772 (4th Cir. 2003) .............................................................. 15, 21

United States v. Blackledge,
    751 F.3d 188 (4th Cir. 2014) ...........................................................................12

Valverde v. Stinson,
    224 F.3d 129 (2d. Cir. 2000) ...............................................................28, 29, 30

Wallace v. Kato,
    549 U.S. 384, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) ........................15, 18

## STATUTES

28 U.S.C. § 1291 ...............................................................................................1
28 U.S.C. § 1331 ...............................................................................................1
18 U.S.C. § 1961, *et seq*...................................................................................1

## RULES

Fed. R. App. P. 38..........................................................................................28
Fed. R. Civ. P. 11 ...........................................................................................27
Fed. R. Civ. P. 11(b)(2)..................................................................................27
Fed. R. Civ. P. 41(a)(1)(A)(ii) ..........................................................4, 10, 13
Fed. R. Civ. P. 78(b) ................................................................................11, 31
Local Rule 11(b) .............................................................................................11
Local Rule 24(b) .............................................................................................11

## OTHER AUTHORITIES

8 James Wm. Moore et al., Moore's Federal Practice § 41.34[4][b] (3d ed.
    2000) ........................................................................................................13, 14

v

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

The United States District Court for the Western District of Virginia ("District Court" or "trial court") had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Karen Foster and Vicki Marsh ("Appellants") sought to intervene in the underlying case styled <u>CVLR Performance Horses, Inc. v. John L. Wynne, et al</u>. ("CVLR's Case") and similarly assert a claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. § 1961, *et seq*.) like the plaintiff, CVLR Performance Horses, Inc. ("CVLR").

The basis for this Court's appellate jurisdiction lies in 28 U.S.C. § 1291, which authorizes appellate review of a final district court decision. The denial of a motion to intervene is an appealable final order.  <u>Stringfellow v. Concerned Neighbors in Action</u>, 480 U.S. 370, 377, 107 S. Ct. 1177, 94 L. Ed. 2d 389 (1987).

On January 8, 2014, the Appellants noted their appeal of the Order dated December 9, 2013 wherein the District Court denied the Appellants to intervene in the case.

## STATEMENT OF THE ISSUES

Whether the District Court correctly exercised its discretion to deny the Appellants' motions to intervene as untimely because their RICO actions were barred by the statute of limitations and the equitable tolling doctrine did not excuse the late filing when Appellants exercised little diligence in actively pursuing their

1

claims and the uncertain nature of the Appellants' claim did not amount to an extraordinary circumstance.

Whether the joint stipulation between Wynne and CVLR to dismiss CVLR's Case renders the Appellants' motions to intervene as moot.

## STATEMENT OF THE CASE

On November 8, 2013, Appellants moved to intervene in the CVLR Case, pending since September 8, 2011, seeking to pursue a claim for a RICO violation.[1] Appendix at 105-122. Appellants asked the District Court to redress alleged wrongs by John L. Wynne, 1650 Partners, LLC, and Rivermont Consultants, Inc. (collectively "Wynne" or "Appellees") that occurred nearly seven years prior to the filing of their intervention motions and several years after the limitation period expired.

When CVLR's Case was filed, CVLR alleged Wynne committed racketeering acts against it. On December 21, 2011, after an initial dismissal with leave to amend, CVLR filed an amended pleading ("First Amended Complaint") and reasserted the RICO violation. Id. at 8-65. In this amendment, CVLR named Marsh and Foster as additional victims. Id. at 30-32. Since December 21, 2011,

---

[1] Marsh sought to file a claim for unjust enrichment in addition to the alleged RICO violation. She, however, did not ask this Court to overturn the decision allowing her to intervene to assert the unjust enrichment claim, perhaps, in part, due to the shorter three year statute of limitations. See Belcher v. Kirkwood, 238 Va. 430, 433, 383 S.E.2d 729, 731 (1989).

2

the alleged acts against Marsh and Foster served as the basis, in part, for CVLR's RICO claim.

Wynne filed another motion to dismiss similarly arguing that the First Amended Complaint failed to sufficiently allege a RICO action. Docket No. 56. On April 2, 2012, the District Court agreed with Wynne and dismissed the federal count. <u>Appendix</u> at 66-67. It further declined to exercise supplemental jurisdiction over the remaining state law claims. <u>Id</u>.

CVLR noticed an appeal of the District Court's decision on May 2, 2012. Docket No. 75. Upon appeal, this Court overturned the dismissal, finding that CVLR sufficiently plead the RICO count. Docket No. 85. An order was entered on May 29, 2013, later deemed effective on July 19, 2013. Docket No. 89.

Once CVLR's federal claim moved forward in the District Court, Wynne challenged the legal sufficiency of the pendent state law claims, which, until that point, had never been considered through the lens of a motion to dismiss. Docket No. 93. In the face of the motion to dismiss, CVLR moved the District Court to amend the complaint for a second time. Docket No. 104. The District Court cautiously allowed CVLR to do so. Docket No. 113. Although CVLR sought to cure the deficiencies in the state law counts, it also unnecessarily added allegations in the subsequent pleading ("Second Amended Complaint") further emphasizing

and clarifying the alleged wrongs against Marsh and Foster, i.e. that Wynne never loaned them money.  Docket No. 104.

Appellants sought permissive intervention on November 8, 2013, nearly two years elapsed after Appellants knew of the CVLR Case.  Stated differently, intervention was sought five months after the effective date of remand.

The District Court ruled that the Appellants' RICO claims were barred by the four year statute of limitations.  Docket No. 139.  Further, the District Court held that the Appellants failed to adequately establish the doctrine of equitable tolling, finding that Appellants failed to diligently pursue their rights and that no extraordinary circumstances existed.  Id.  The decision on equitable tolling, not the application of the statute of limitations, is at issue in this appeal.

Apart from and since this ruling, CVLR and Wynne jointly stipulated to the dismissal of the CVLR Case pursuant to Rule 41(a)(1)(A)(ii).  Docket No. 181. Accordingly, the court dismissed CVLR's Case by Order dated March 27, 2014. Id.  Nonetheless, Marsh and Foster continue their efforts to intervene in a case that is no longer active on the District Court's docket.

## STATEMENT OF THE FACTS

### I.    Marsh's RICO Allegations Against Wynne

Marsh owned a one-half interest in a beach house located in Pawley's Island,

South Carolina.[2] Appendix at 27. She owned the property with two co-tenants, the Zimmermans. Second Amended Complaint at 23 (Docket No. 104). The Zimmermans filed a partition suit to force the sale of the property. Id. Presumably in fear of the Zimmermans "buying out" Marsh or a forced auction by the court,[3] Marsh sought help from Wynne to buy out the co-tenants. Appendix at 27. Wynne provided a solution to Marsh's problem.

In doing so, Wynne sent Marsh two notes, together totaling $390,000, both of which were secured by two deeds of trust against Marsh's property in Washington County, Virginia. Second Amended Complaint at 24. Sometime prior to November 8, 2006, Marsh recorded the deeds of trust in the Clerk's Office for the Circuit Court of Washington County, Virginia. Id. In addition, on March 2, 2007, Marsh conveyed her one-half (1/2) interest in the Pawley's Island property to Wynne. Id. at 26.

---

[2] The alleged wrongs committed against Marsh have been part of CVLR's action since the First Amended Complaint and, even later, in the Second Amended Complaint. The allegations in this section are pulled from those pleadings. Second Amended Complaint is not part of the Appendix, but is part of the record forwarded by the District Court. Appellants adopt the allegations in the Second Amended Complaint as it pertained to them. Appendix at 111, 118.

[3] An adverse consequence of a partition suit includes losing the benefit of possession, or even ownership, of the property.

Although Marsh acknowledges that Wynne paid $450,000 to a South Carolina court to buy out the co-tenants' interest in the beach property, she maintains the absurd position that Wynne did not directly loan her money. Id. at 24, 26.    To repay Wynne, Marsh sought financing from First Bank &Trust Company ("First Bank"). Id. at 26. On or around January 23, 2007, First Bank provided a Truth-in-Lending Disclosure Statement detailing the financing terms to Marsh. Id. at 27.  First Bank never provided financing, but forwarded the loan application to Wachovia Bank, NA, now Wells Fargo and Company. Id.

On or about April 15, 2007, Wachovia mailed a Disclosure Statement outlining the loan terms to Marsh. Id. at 27-28.  In addition, Wachovia mailed Marsh a note and other mortgage related documents. Id. at 28.  Marsh signed the note and mortgage documents and returned to those documents to Wachovia. Id.

Although Marsh did not attend the closing, she signed the settlement statement agreeing that Wynne would receive $492,650.85. Id.  On March 30, 2007, Wachovia disbursed these funds to the law offices that administered the closing. Id.  In turn, as Marsh agreed, the funds were disbursed to Wynne. Id.  As part of his efforts to help Marsh, Wynne made the monthly mortgage payments on the Wachovia loan for a significant period of time although not obligated to do so. Id. at 29.  Marsh and Wynne agreed to develop the property, but the project was no longer economically feasible and Wachovia foreclosed on the property. Id.

The essence of Marsh's claim is that Wynne committed wire fraud as part of his ongoing racketeering scheme when he directed the closing agent by telephone to disburse unauthorized funds to him despite her agreement to the disbursement. Appendix at 119.

## II.    Foster's RICO Allegations Against Wynne

According to Foster, in early 2006, she sought financing from Rivermont Consultants, Inc., an entity run by Wynne. Second Amended Complaint at 24. On August 23, 2006, Foster was the maker on a $40,000 note payable to Wynne although she claims that Wynne never loaned her any money. Id.  The note was secured by a deed of trust on Foster's property located at 2232 Ridgewood Drive, Lynchburg, Virginia.  Id.  Foster contends that the deed of trust was a nullity because no funds were advanced under the note.  Id.

Upon default of the note and corresponding deed of trust, Wynne foreclosed on Foster's property at 2232 Ridgewood Drive on September 25, 2008, two years after the recordation of the deed of trust.  Id. at 21. Prior to the filing of Wynne's deed of trust, Bank of America filed a deed of trust against the same property.  Id. The foreclosure extinguished all junior liens while Bank of America's superior lien had not been satisfied from the sale proceeds.  Id.  Foster asserted that Wynne improperly foreclosed on her house despite a final order by the City of Lynchburg Circuit Court upholding its validity.  Appendix at 143.

In Foster's proposed RICO action, she alleges that Wynne misrepresented his ownership of 2232 Ridgewood Drive and the status of any outstanding mortgages on the property when he submitted a financial statement dated February 5, 2010 submitted to Old Dominion National Bank.  Id. at 47.   Inconsistent with her position, Foster acknowledged that Bank of America's mortgage was satisfied on January 12, 2010, clearly before the date of Wynne's financial statement.  Id. at 25.

### III.    Facts Showing Marsh's Lack of Diligence

Marsh states that she complained to the federal and state criminal authorities, as well as the banking regulatory agencies responsible for regulating Wachovia's lending practices, and to the South Carolina courts about Wynne's actions.  Id. at 151.  The South Carolina court heard the partition suit between Marsh and the Zimmermans, not a claim against Wynne.   Second Amended Complaint at 23.  No facts were offered explaining how Marsh diligently pursued a RICO claim, an insurmountable flaw in her theory.

In November 2006, Marsh recorded deeds of trust against her own property in Washington County, Virginia despite her claim that Wynne never loaned her money.  Id. at 24.  On March 30, 2007, Marsh acknowledged disbursement of Wachovia loan proceeds to Wynne.  Id. at 28.  With knowledge of these events,

Marsh waited until November 8, 2013, nearly 6 years later to pursue a RICO action.

### IV. Facts Showing Foster's Lack of Diligence

Like Marsh, Foster offers no facts or an explanation how she exercised diligence in her pursuit of a RICO action. Rather, Foster points to her dispute with Wynne in the City of Lynchburg Circuit Court and the Bankruptcy Court for the Western District of Virginia over the validity of the foreclosure. The City of Lynchburg Circuit Court previously ruled by Order dated May 23, 2012 that Wynne was the fee simple owner of the property and upheld the validity of the Wynne's deed of trust and resulting foreclosure. <u>Appendix</u> at 143-148. The Lynchburg Circuit Court further ruled that Foster unlawfully possessed the property and, thus, Foster was subsequently evicted on or about June 1, 2012.[4] <u>Appendix</u> at 111. Aside from the dispute over the foreclosure, Foster never filed any suit remotely similar to a RICO action.

Looking back to when Marsh's claim accrued, Wynne's deed of trust was recorded in August 23, 2006. <u>Second Amended Complaint</u> at 20. Foster acknowledged that she knew of Wynne's deed of trust when she filed her Chapter 7 Summary of Schedules dated October 1, 2007 in the Bankruptcy Court for the

---

[4] Although Foster aimed to challenge the Lynchburg Circuit Court Order by filing for protection in the Bankruptcy Court for the Western District of Virginia, the bankruptcy action was dismissed thereby giving legal import and effect to the Order dated May 23, 2012.

Western District of Virginia, case number 07-61731.  <u>Appendix</u> at 204.  Like Marsh, Foster filed her motion to intervene on November 8, 2013, a delay of almost seven years.

### V.    Alleged Extraordinary Circumstance

The District Court dismissed CVLR's RICO claim on April 2, 2012 and the Court reversed the decision on May 29, 2013.  The period in between these two dates, per Appellants, is the duration of the extraordinary circumstances.

### SUMMARY OF THE ARGUMENTS

Regardless of the appeal's merits, the Appellants' motions to intervene are rendered moot because CVLR and Wynne stipulated to a dismissal of the CVLR Case pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.

The District Court correctly exercised its discretion to deny the Appellants' motions to intervene as untimely and the equitable tolling doctrine did not excuse the tardy filing.  The exercise of discretion was proper for several reasons.

First, the Appellants could not demonstrate the exercise of due diligence where (1) they failed to set forth sufficient facts or explain how they exercised due diligence, (2) the Appellants pursued matters against Wynne other than a RICO action, (3) they waited more than five years after their claims accrued to seek intervention, (4) they waited six months after the conclusion of the alleged extraordinary circumstance (CVLR's appeal), (5) the smallest amount of diligence

would have resulted in a timely filing, and (6) they adopted a "wait and see" strategy while the CVLR Case developed.

Second, the uncertainty of the Appellants' claim due to another party's pending appeal does not constitute an extraordinary circumstance in the context of equitable tolling. Third, an evidentiary hearing need not be conducted as permitted under Rule 78(b) of the Federal Rules of Civil Procedure and Rule 11(b) of the Local Rules for the United States District Court for the Western District of Virginia. Fourth, the extraordinary circumstances occurred after the limitation period as conceded by Appellants and, thus, did not obstruct a timely filing as a matter of law.

## ARGUMENT

### I. Standard of Review

A decision to deny permissive intervention under Rule 24(b) lies within the sound discretion of the trial court." Smith v. Pennington, 352 F.3d 884, 892 (4th Cir. 2003). This Court reviews a trial court's ruling on equitable tolling similarly under an abuse of discretion standard. Chao v. Va. DOT, 291 F.3d 276 (4th Cir. 2002).

A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of

law.  United States v. Blackledge, 751 F.3d 188, 209 (4th Cir. 2014).  "At its immovable core, the abuse of discretion standard requires a reviewing court to show enough deference to a primary decision maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance."  Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 322 (4th Cir. 2008).  Deference is the hallmark of this standard.  Id.

## II.  Discussion of the Issues

### A.    Appellants' Motion For Intervention Is Moot Given The Joint Dismissal Of The CVLR Case

Foster and Marsh's appeal is rendered moot in light of CVLR and Wynne's joint stipulation to dismiss the underlying case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  Turning a blind eye to the dismissal, they nevertheless seek to appeal the denial of their intervention motions.  Generally accepted case law bars the advancement of their appeal on this ground alone.

In Chesapeake Bay Foundation v. American Recovery Co., the Fourth Circuit dismissed an appeal as moot when the underlying action had been resolved by a consent decree.  769 F.2d 207 (4th Cir. 1985).  The plaintiffs notified the defendant, the State of Maryland, and the Environmental Protection Agency of the defendant's alleged violations of the Clean Water Act.  Id. at 208.  Ignoring an agreement between the government and the plaintiffs to allow the government to solely file suit, the plaintiffs pushed forward with their own filing.  Id.  As it turned

out, the plaintiffs and the government filed suit on the same say.  Id.  Defendant

immediately moved to dismiss the plaintiffs' suit as duplicative and the court

agreed.  Id.  After dismissal, plaintiffs sought to intervene in the government's suit

by statutory right under the Clean Water Act, but the district court denied them this

right, perhaps erroneously.  Id.  Even though the denial of intervention may have

been in error the intervention motion was moot because the government and the

defendant reached a settlement.  Id. at 209.

In Chesapeake Bay, this Court declined to overturn a denial of intervention

when the intervenor clearly had a statutory right.  A denial of statutory intervention

is a far more egregious error than denial of permissive intervention.  Yet, even the

most egregious error cannot be cured when there is no underlying case, a necessary

predicate for an intervening party.

A joint stipulation of dismissal immediately ends the "case or controversy"

upon filing.  GMAC Commer. Mortg. Corp. v. LaSalle Bank N.A., 213 F.R.D. 150

(S.D.N.Y.2003).  Without a pending case, a party cannot intervene.  Id. The court

in GMAC cited Moore's Federal Practice, which provided that "[a] stipulation

[under Fed. R. Civ. P. 41(a)(1)(A)(ii)] filed during the pendency of a motion to

intervene is effective to dismiss the action, since the proposed intervenors do not

become parties within the meaning of the Rule until their motion is granted."  8

James Wm. Moore et al., Moore's Federal Practice § 41.34[4][b], at 41-113 (3d ed. 2000).

Even assuming that the District Court committed error here, the issue is moot because the parties jointly stipulated to the dismissal and no action is pending to which Marsh and Foster can intervene. Wynne filed a Motion to Dismiss in this appeal and the Appellants concede that no contrary authority exists. Docket No. 25. In sum, their ability to intervene died with the underlying case.

**B.      The District Court Correctly Exercised Its Discretion And Ruled That Marsh And Foster Did Not Exercise Due Diligence Where (1) They Failed To Set Forth Sufficient Facts How They Actively Pursued Their Claims, (2) They Waited More Than Five Years To Seek Intervention After Their Claims Accrued, (3) They Waited Six Months After This Court Overturned The Dismissal To Seek Intervention, (4) The Smallest Amount Of Diligence Would Have Resulted In A Timely Filing, And (5) They Adopted A "Wait And See" Strategy.**

To determine whether to apply the equitable tolling doctrine, on a basic level, the "inquiry is whether congressional purpose is effectuated by tolling the statute of limitations . . . ." Burnett v. N.Y. Central R.R. Co., 380 U.S. 424, 427, 85 S. Ct. 1050, 13 L. Ed. 2d 941 (1965). In particular, the proponent must show (1) that she has diligently pursued her rights and (2) that some extraordinary circumstance prevented the timely filing. Holland v. Florida, 560 U.S. 631, 655, 130 S. Ct. 2549, 2566, 177 L. Ed. 2d 130, 149 (2010).

14

The Supreme Court has recognized that "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Wallace v. Kato, 549 U.S. 384, 396, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007). Federal courts have typically extended equitable relief only sparingly. Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990). While rarely discarding limitation periods, the United States Court of Appeals for the Fourth Circuit ("this Court") has cautioned on a number of occasions that equitable tolling is an extraordinary remedy and that

> any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would lose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Chao v. Virginia Dept. of Transp., 291 F.3d 276, 283 (4th Cir. 2002) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)).

Equitable tolling is not appropriate in cases where "the claimant failed to exercise due diligence in preserving his legal rights." Irwin v. Dep't of Veterans Affairs, 498 U.S. at 96. This Circuit has noted that due diligence can be exercised by "actively pursu[ing] . . . judicial remedies by filing a defective pleading during the statutory period." United States v. Babb, 54 Fed. Appx. 772, 774 (4th Cir.

15

2003)(quoting Irwin, 498 U.S. at 96.).  The degree of diligence required is due diligence, or reasonable diligence.  Holland, 560 U.S. at 653. "Principles of equitable tolling do not extend to garden variety claims of excusable neglect." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (citing Irwin, 498 U.S. at 96).

### 1.    Marsh

Marsh did not set forth the requisite factual predicate to explain how she diligently pursued a RICO claim.  Rather, Marsh explained how she pursued other matters in other arenas.  As the District Court correctly recognized, since 2008, Marsh complained to (i) federal and state criminal authorities, (ii) regulatory agencies that oversee Wachovia's banking practices, and (iii) the South Carolina court adjudicating the Zimmermans' partition suit.  Appendix at 151.  While Marsh may have taken steps to report Wynne's action to criminal authorities and other third parties, Marsh failed to allege how she actively pursued a RICO claim, an entirely different matter.  Filing a RICO claim is not synonymous with the actions described above.  The District Court properly exercised its discretion when it ruled, standing on these facts, that Marsh did not carry her burden of proof on the diligence prong.

The transparent reason that Marsh did not actively pursue her claim is because she adopted a "wait and see" strategy while CVLR's Case unfolded, a tactic that carries an inherent risk of missing a filing deadline.  It is helpful to

16

analyze when Marsh's claim accrued[5] according to her allegations to determine how long she sat on her rights.

According to Marsh's timeline, she asserts that she was first injured in September, 2008, the date when Wynne stop making payments on the Wachovia loan. Appellants contend that the period of extraordinary circumstances (the length of the appeal) occurred from the date of the District Court's dismissal (April 2, 2012) through the date that this Court reversed the decision (May 29, 2013). More than three and a half years passed from Wynne's last payment until the District Court's dismissal.

Assuming that September, 2008 was the accrual date, the District Court found that waiting for three and a half years is hardly the exercise of "even a modicum of due diligence." Appendix at 244. Yet, Marsh's own allegations suggest that her claim accrued much earlier.

For instance, in November, 2006, Marsh admittedly recorded the deeds of trust on her property securing the note to Wynne while unbelievably contending that Wynne never loaned her any money. Second Amended Complaint at 24-25. Or Marsh could have been injured shortly thereafter when she conveyed a ½ interest to Wynne in the Pawley's Island property on March 2, 2007, similarly in

_____

[5] A four year statute of limitations applies to private civil RICO claims, running from the "date when the plaintiff discovered, or should have discovered, the injury." See Potomac Elec. Power Co. v. Electric Motor and Supply, Inc., 262 F.3d 260, 266 (4th Cir. 2001); see also Rotella v. Wood, 528 U.S. 549, 555 (2000).

17

the absence of any loaned funds. <u>Id</u>. at 26. Marsh would have been injured when she was partially divested of ownership.

The latest date of injury could have been on March 30, 2007 when Marsh signed the Settlement Statement acknowledging disbursement of the Wachovia loan proceeds to Wynne. <u>Id</u>. at 28. According to Marsh, Wynne retained his interest in the Pawley's Island property after his loan was fully satisfied. <u>Id</u>. at 29. Assuming her allegations are true, this date would surely operate as the latest date her claim accrued, which she knew or should have known.

Contrary to this logic, Marsh insists that the controlling date is when Wynne stopped making payments on the Wachovia loan. However, this event was not the direct injury of any alleged racketeering scheme. The fruits of the alleged scheme, or the date of injury, occurred when Wynne obtained an interest in the beach property. Wynne's refusal to make payments on the Wachovia loan was simply the residual or lingering consequences of the alleged fraudulent scheme. <u>See</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 391, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007) (rejecting view that the statute of limitations would begin to run only after a plaintiff became satisfied that he had been harmed enough).

The recitation of events illustrates Marsh's long history with Wynne and how long she waited to pursue a claim. She should have known about her claim since November, 2006, but no later than March 30, 2007. Yet, she waited until

November 8, 2013 seeking to intervene. The passage of over five years is not the exercise of due diligence. Although the extraordinary circumstances were eliminated on May 29, 2013 when this Court overturned the dismissal, Marsh waited another six months to seek intervention. Marsh seizes on the District Court's reference to three and a half years for the proposition that the limitation period was reduced. This position is misleading because Appellants already conceded that the statute of limitations barred their claim and further misinterprets the court's reasoning.

The apparent purpose of this time reference was to emphasize how long Marsh waited to pursue the claim, particularly where she may have been mistaken about the limitation period. The District Court found that Marsh believed that the limitation period ended in September 2012. Even under a mistaken belief, the District Court correctly ruled that she waited three and a half years to file anything remotely resembling a RICO claim.

The court in Escalante v. Huffman explains this point. 2011 U.S. Dist. LEXIS 81382 (W.D. Va. 2011). In Escalante, a prisoner filed a civil rights action alleging that he had not received a proper diet consistent with his gluten intolerance. Id. at 1-2. A two year statute of limitation applied to his action. Id. at 18. Although the prisoner filed the action on May 18, 2010, he believed, albeit incorrectly, that the action was timely filed as the outdated law library indicated a

three year limitation period.  Id. at 19.  Applying the correct limitation period, the court ruled that events occurring before May 18, 2008 were time barred unless the court was to toll the limitation period.  Id. at 18.  Upon consideration of the tolling argument, the court emphasized that the prisoner strategically waited to file his complaint near the end of the limitation period as he believed it to be.  Id. at 23.  A strategic decision to wait does not support diligence in pursuing one's claim.  Id. Simply because one files within the limitation period as one believes it to be does not equate to the exercise of diligence.

Like the prisoner in Escalante, Marsh passively watched the developments of CVLR's Case for strategic purposes.  The District Court here correctly determined that Marsh similarly waited far too long to resemble an exercise of due diligence.  Equitable tolling does not protect one who strategically waits to file a claim.

### 2.  Foster

Like Marsh, Foster did not set forth sufficient facts to explain how she diligently pursued her RICO claim.  Based on the minimal facts presented by Foster, the District Court correctly found that she was involved in lawsuits not involving a RICO claim, a disputed foreclosure action and her Chapter 7 bankruptcy case.  Appendix at 243.  In addition to challenging Wynne's actions in those proceedings, the District Court explained that Foster could have filed a

20

defective pleading by asserting a RICO violation during the statutory period, but did not do so.  Id.;  see also Babb, 54 Fed. Appx. at 774.

Foster argues that the District Court failed to recognize all of her efforts to diligently pursue a RICO claim against Wynne.  She cites that she challenged the foreclosure in Lynchburg City Court and in her Chapter 11 Bankruptcy case.  In those proceedings, she asserted that Wynne never loaned her money thereby nullifying the deed of trust under which Wynne foreclosed.  The downfall of Foster's argument should be apparent.  In essence, Foster asks this Court to equate her efforts in challenging the foreclosure with that of pursuing a RICO action, the proverbial comparison of apples and oranges. The District Court need not broadly focus on Foster's reported efforts as none of them equate to pursuing a RICO claim.

Foster further argues that the District Court reduced the limitation period to three and one half years.  This argument has no application because the District Court made reference only to Marsh and explained how she waited far too long for her efforts to be considered diligent.  As explained above, Appellants conceded that they missed the limitation deadline.  Now, they try to raise it from the dead like a phoenix from the ashes.

One glaring omission from Foster's brief is an explanation of how quickly she filed anything remotely close to a RICO action its accrual.  Accrual of the

action begins on the date when the plaintiff discovered, or should have discovered, the injury. See Potomac Elec. Power Co., 262 F.3d at 266.  Her injury could have occurred as early as August 23, 2006 when a deed of trust was recorded on her property, particularly since she claims that Wynne never loaned her money. Second Amended Complaint at 20.  Recording an instrument operates as constructive notice to the whole world of its contents.  Smith v. Plaster, 151 Va. 252, 144 S.E. 41 (Va. 1928). She should have known of its recording.  Foster waited almost seven years after this date to file its intervention motion.  Viewed differently, five and a half years elapsed until the District Court's decision.

Although Foster arguably may not have known of the recorded deed of trust at the time of filing, however, she acknowledged its recordation on October 1, 2007 when she filed the Summary of Schedules in her Chapter 7 bankruptcy case. Foster waited over six years from then to intervene.  From a different vantage point, four and a half years passed to the date of CVLR's dismissal.

The fact that Foster may have mentioned her RICO claim in March 2012 in her Chapter 11 bankruptcy further evidences that she knew about the claim for some time, but continued with the "wait and see" approach.  The District Court apparently placed little credence on this fact considering how long Foster knew or should have known of her claim.

Similar to how Marsh waited six months after this Court's reversal to seek intervention, Foster also passively waited. Assuming that the length of the appeal precluded an earlier filing, they still sat on their rights for an additional six months.

The District Court here correctly ruled that Foster's efforts were focused on pursuing other matters, not a RICO claim. Even assuming otherwise, Foster's strategic decision to wait should not be rewarded.

### 3. Marsh and Foster

In addition to the length of delay, the District Court further focused on how little effort Marsh and Foster needed to file suit or seek to intervene. It noted that they did not file a defective pleading, which would be one way to exercise diligence. Appendix at 243.

The District Court recognized the apparent close relationship between Appellants and CVLR. Based upon the level of detail added in CVLR's pleadings, it was apparent to the District Court that Appellants had communicated with CVLR's counsel[6] as early as November 30, 2011 when CVLR's First Amended Complaint was filed, and realistically much sooner. Id. at 240. CVLR's counsel would have needed to discuss the details of the Appellants' alleged claim to incorporate the allegations in the pleading. Id.

---

[6] Gary M. Bowman represented CVLR in the RICO action against Wynne and has been counsel of record for Marsh and Foster in this case since their attempts to intervene, perhaps longer.

Given their apparent interaction with CVLR or its counsel, the smallest amount of effort would have resulted in an earlier filing. In actuality, Marsh and Foster could have reasonably asserted the same allegations as those put forth by CVLR in the First Amended Complaint and Second Amended Complaint. Rather, they employed a "wait and see" strategy, one that is inconsistent with a prudent and diligent pursuit.

### C.   The District Court Correctly Exercised Its Discretion And Ruled That The Uncertainty Of The Appellants' Claim Due To CVLR's Appeal Does Not Constitute Extraordinary Circumstances

Marsh and Foster contend that the improper dismissal of CVLR's RICO cause of action and subsequent appeal, together, is an extraordinary circumstance that excused an earlier intervention in CVLR's Case. Until the appeal was overturned, Appellants believe that intervention would have been frivolous and, thus, sanctionable under Rule 11 as the claims would no longer be warranted by existing law. They do not contend that Wynne caused the delay, only that a pending appeal created uncertainty of their claim's validity. No authority has been cited by Marsh and Foster to support these propositions and they acknowledge a lack of authority.

Equitable tolling has been applied in "two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second,

extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). This case deals with the latter.

The focus should be not on the unusual circumstances to warrant tolling, but the severity of the obstacle to preclude filing. Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008). This situation here is most akin to a plaintiff facing unsettled law. As a matter of law, unsettled law does not create "extraordinary circumstances" in the context of equitable tolling. Reed v. Mokena Sch. Dist. No. 159, 41 F.3d 1153, 1155 (7th Cir. 1994); Garrick v. DiGuglielmo, 162 Fed. Appx. 122, 124 (3d Cir. 2005).

In Garrick, the petitioner filed a petition for a writ of habeas corpus merely six days after the expiration of the one year statute of limitation. Id. at 123. He argued that the Third Circuit's cases discussing when to file the action were sufficiently unsettled so as to create an "exceptional circumstance." Id. at 124. The Third Circuit held that uncertainty surrounding the law, standing alone, does not create an extraordinary circumstance. Id. In actuality, the petitioner was his own hindrance to timely filing the petition. Id. Had he advanced his claims within a reasonable time of their availability, the court ruled that he would not have faced a time problem. Id. at 125.

Here, uncertainty of the validity of Appellants' RICO claim is no different than uncertainty of unsettled law. Both carry uncertainty whether a claim can advance. Nonetheless, they ask this Court to excuse their late filing to a time when the law is clarified or the state of one's claim improves. Any seasoned lawyer could craft an argument that would cast doubt on the validity of a one's own claim. All late filings would likely meet this lessened standard. The law may never be clarified or facts ever be developed to make one's claim viable. Such a low standard opens the door to allow a potential claim to linger in perpetuity, a consequence that belies the finality principle. Equitable tolling is reserved only for rare situations. A doctrine premised on fairness cannot support an inherently flawed standard.

The District Court correctly focused on the severity of the circumstances that precluded an earlier filing. The District Court noted the severe exigencies of war stemming from both the Civil War and World War II. See Hanger v. Abbott, 72 U.S. (6 Wall.) 532, 18 L. Ed. 939 (1867). Clearly, the uncertainty of a lingering appeal pales in comparison to the exigencies created by war. Although the District Court recognized that the appeal produced a "difficult circumstance," it did not rise to the level of extraordinary to justify tolling. Appendix at 246. Equitable tolling is an extraordinary remedy and should not be a substitute for individual hardships. Chao, 291 F.3d at 283 (4th Cir. 2002).

26

Although the situation may have been unusual, the exigency created by Marsh and Foster was self-induced. They contend that the courthouse doors were figuratively closed by the District Court. On the contrary, the courthouse doors remained open, but they just elected to not step inside. The self-inflicted hardship was largely created by waiting for the CVLR Case to unfold. The prudent course of action would have been to file suit or intervene and join in CVLR appeal. Instead, they were passive observers.

Marsh and Foster further argue that Rule 11 of the Federal Rules of Civil Procedure precluded an earlier filing in light of the District Court's dismissal of CVLR's Case. The filing of a complaint, as they posit, would not be "warranted by existing law." Rule 11(b)(2) reads as follows:

> the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

The filing of a complaint by Marsh and Foster during the pendency of the prior appeal would be no more frivolous than CVLR filing its appeal. Rule 11 requires an attorney of record to sign a pleading, motion or paper. The signature carries representations made to the court certifying that the claims are well grounded in law and fact. When CVLR's counsel noted and filed the appeal, he certified that the filing of the appeal was consistent with existing law as both he and CVLR believed that the District Court committed error when it ruled that the

27

alleged predicate acts did not amount to open-ended continuity.  See Fed. R. App. P. 38.  This Court reversed and, given the decision, no sanctions were imposed.

Marsh and Foster were similarly situated as CVLR.  The predicate acts claimed by them were virtually the same as those alleged by CVLR.  It begs the question how they could be sanctioned when CVLR was not.  Surely, Marsh and Foster do not contend that CVLR or her counsel should have been sanctioned, otherwise the argument would undercut the validity of their RICO claims.  Thus, the motions to intervene would not have been sanctionable.

In short, the uncertainty of a claim does not create an extraordinary circumstance.

### D.      Equitable Tolling Does Not Apply When The Extraordinary Circumstance Occurred After The Limitation Period Expired

Assuming that extraordinary circumstances existed, the Appellants must demonstrate a causal connection to the lateness of the filing.  Valverde v. Stinson, 224 F.3d 129, 134 (2d. Cir. 2000).  Although the District Court here denied the application of the doctrine on other grounds, it is worth repeating this argument advanced by Wynne in the District Court.  Appendix at 187, 193.

In Valverde, a petitioner filed a writ of habeas corpus after the running of a one year statute of limitation.  224 F.3d at 133.  Due to the missed deadline, the petitioner sought to toll the running of the limitation period due to confiscation of his legal papers by prison authorities.  Id.  Assuming extraordinary circumstances

exist, the district court must determine whether those circumstances prevented a petitioner from timely filing. Id. at 134. It further provided that

> [i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing.

Id. The rub of Valverde is that there must be a causal link or connection between the extraordinary circumstances and the lateness of the filing. Stated differently, the extraordinary circumstances must obstruct a timely filing.

In this case, the extraordinary circumstances did not occur during the limitation period, but well after. Per Appellants, the extraordinary circumstances commenced on April 2, 2012. As previously set forth, Marsh's cause of action accrued as late as March 30, 2007 when she signed the Settlement Statement acknowledging disbursement of funds to Wynne, or perhaps sooner. In application of a four year limitation period, Marsh's deadline would have been March 30, 2011. The erroneous dismissal occurred more than one year later.

In Foster's case, the RICO cause of action accrued as early as August 23, 2006 when Wynne allegedly recorded a sham deed of trust on her property. Foster acknowledged the recordation as late as October 1, 2007 when she listed Wynne as a creditor in her Summary of Schedules despite her belief that Wynne never loaned

29

her money.  The limitation period would thus expire on October 1, 2011.  The dismissal occurred six months later.

Conceding this point, Appellants wrote that "[e]xtraordinary circumstances prevented Foster's and Marsh's timely intervention because the district court erroneously dismissed [CVLR's Case] *after* their limitation period expired but *before* this court reversed the dismissal." See Opening Brief of Appellants at 19 (emphasis in original). This concession alone should be dispositive of the entire appeal.  In short, Appellants acknowledge that the triggering date of the extraordinary circumstances occurred after the limitation period expired.  When the triggering event occurs outside of the limitation period, the causal chain is broken and no time remains to be tolled.

Equally important, Appellants waited approximately six months after the appeal was reversed.  Nothing stood in the Appellants way during this period to prevent a timely filing.  As ruled in Valverde, the delay broke the causal chain.

As a matter of law, the causal connection is broken here, and equitable tolling is an unavailable remedy.

### E. District Court Properly Exercised Its Discretion By Ruling On The Intervention Motions Without Conducting An Evidentiary Hearing

By another concession, Appellants seemingly acknowledge that they did not offer sufficient evidence to carry their burden on the diligence prong because they

contend they were allowed they were denied an evidentiary hearing to explain the delay. Rule 78(b) of the Federal Rule of Civil Procedures provides that the court may provide for submitting and determining motions on briefs, without oral hearings. Local Rule 11(b) of the United States District Court for the Western District of Virginia, per Rule 78(b), states that the District Court "may determine a motion without an oral hearing." A district court judge does not abuse his discretion when disposing of a motion without a hearing, provided the local rules so permit. <u>Riddle v. Mondragon</u>, 83 F.3d 1197, 1208 (10th Cir. 1996); <u>Hill v. Porter Mem'l Hosp.</u>, 90 F.3d 220, 224 (7th Cir. 1996). To avoid such an occurrence, the prudent course of action would have been to attach sworn affidavits and documents to the motion to intervene. Appellants did not take the prudent approach.

For the first time, on appeal, Marsh contends that her mental impairment precluded her from timely filing and the District Court should have explored the depths of her mental impairment in an evidentiary hearing. Rule 78 provides otherwise.

Moreover, issues raised for the first time on appeal generally will not be considered. <u>Muth v. United States</u>, 1 F.3d 246, 250 (4th Cir. 1993). The brief generally refers to Marsh as "autistic." Her motion and accompanying memorandum is devoid of any explanation as to how her autism precluded her

from understanding her claim or the need to timely file.  Medical records (attached to the motion and placed under seal) supporting such a position would have been the prudent approach.

In support of this new argument, Marsh relies on <u>Forbess v. Franke</u>, a case that permits equitable tolling for a petitioner under a mental illness when the petitioner failed to understand the need to timely file a petition.  749 F.3d 837 (9th Cir. 2014). In <u>Forbess</u>, the petitioner was convicted for the murder of his wife. <u>Id</u>. at 839.   Upon filing his federal habeas petition, he offered a detailed explanation, albeit seemingly incredible, that he worked with the FBI to apprehend his murdered wife and her family, who he believed was part of a drug cartel. <u>Id</u>. Petitioner believed that the FBI staged his conviction for his wife's murder to lure her out of hiding.  <u>Id</u>.  He believed that, upon her arrest, he would be released from prison.  <u>Id</u>.  Under this disillusioned belief, he did not understand the need to timely file his petition. <u>Id</u>.

The Ninth Circuit articulated a two-part test to determine whether a mental impairment amounts to an extraordinary circumstance in the context of equitable tolling.  <u>Bills v. Clark</u>, 628 F.3d 1092 (9th Cir. 2010)(when a petitioner's level of intelligence and psychosis were placed in issue by the petition, an evidentiary hearing may be awarded in the trial court); <u>see also</u> <u>Canales v. Sullivan</u>, 936 F.2d 755, 759 (2d Cir. 1991)(an evidentiary hearing was awarded because the petitioner

alleged a mental impairment). The severity of the impairment must render the petitioner unable to understand the need to timely file and, under the totality of the circumstances, make it impossible for petitioner to meet the filing deadline despite due diligence. Id. at 1093.

In Forbess, petitioner's doctors provided opinion testimony, which was necessary to meet the Bills test. 749 F.3d at 840-841. The record was well documented with the petitioner's history of his mental impairment and delusions. Id.

Here, Marsh contends that the District Court should have permitted an evidentiary hearing to give her an opportunity to offer evidence of her mental impairment. This stratagem is akin to Monday morning quarterbacking, a tactic employed to comb the record for errors even when the issue was never placed before the trial court. Marsh aims to seize upon the lack of a hearing to circumvent the fact that she submitted a motion that never explained (nor offered evidence) how her autism precluded her from understanding the need to timely file her motion. It begs the question why a hearing would be needed when Marsh's mental impairment was never at issue.

## CONCLUSION

Wynne requests this Court to affirm the District Court's denial of the Appellants' motions to intervene as untimely and refusal to apply the doctrine of equitable tolling to excuse their late filing of RICO actions.

## REQUEST FOR ORAL ARGUMENT

Oral argument need not be heard because this Court may exclusively rely on the briefs to affirm the District Court's decision on the grounds that (1) the appeal is moot or (2) Appellants' concession that the triggering event of the extraordinary circumstance occurred after the limitation period expired.  If the decision cannot be affirmed on either of these grounds alone, then the Appellees believe that oral argument may be necessary as the alleged circumstances present an issue of first impression with the Court.

Respectfully submitted,

**John L. Wynne; 1650 Partners, LLC; Rivermont Consultants, Inc., f/k/a The Rivermont Banking Co., Inc.**

By  /s/  Chad A. Mooney
Chad A. Mooney
VSB #: 75211
John E. Falcone
VSB #: 17879
PETTY, LIVINGSTON,
DAWSON & RICHARDS
725 Church Street, Suite 1200
P.O. Box 1080
Lynchburg, VA  24505
(434) 846-2768 (telephone)
(434) 847-0141 (facsimile)
cmooney@pldrlaw.com

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because this brief uses a proportional typeface and contains <u>7,885 words</u>, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of  Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportional typeface using <u>Microsoft Word 2000, Times New Roman style, 14 point font</u>.

Dated: September 12, 2014

        <u>/s/  Chad A. Mooney</u>
        Chad A. Mooney

        Counsel for Appellees

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have filed the Response Brief of Appellees with the Clerk, United States Court of Appeals for the Fourth Circuit via hand delivery and electronically using the Court's CM/ECF system which will send notification of such filing to:

> Gary M. Bowman
> Attorney At Law
> Suite 100
> 2728 Colonial Avenue
> Roanoke, VA 24015
> (540)343-1173
> Garymbowman3@cox.net
> Counsel for Appellant

Dated: September 12, 2014

<u>/s/  Chad A. Mooney</u>
Chad A. Mooney
Counsel for Appellees